# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**FILED**

2004 MAR 31  P 1: 53

U.S. DISTRICT COURT

| | |
|---|---|
| AMERICAN WHOLESALERS UNDERWRITING, LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    No. 3:02CV1793(DJS) |
| | : |
| AMERICAN WHOLESALE INSURANCE GROUP, INC., | : |
| | : |
| Defendant. | : |

## MEMORANDUM OF DECISION

Plaintiff, American Wholesalers Underwriting, LTD. ("AWUL"), brings this action against defendant, American Wholesale Insurance Group ("AWIG"), based upon Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), Connecticut common law, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq. Defendant has filed a motion to dismiss (dkt. # 13) the complaint for lack of personal jurisdiction. For the reasons set forth herein, defendant's motion is **GRANTED** in that the court finds that exercising personal jurisdiction over AWIG in the District of Connecticut is improper, but **DENIED** inasmuch as defendant seeks dismissal of this action. This case shall be transferred to the Western District of North Carolina.

## I. FACTS

AWUL is a Connecticut corporation with its principal place of business located in Stamford, Connecticut, where it engages in the business of rendering insurance services. AWIG is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina, and also engages in the business of rendering insurance services. AWUL maintains a web site with the domain name <http://www.wipwins.com>. AWIG maintains a web site with the domain name <http://www.amwins.com>.

AWUL began providing insurance services under its trade names of "American Wholesalers Underwriting" and "American Wholesalers" in 1994. AWUL alleges that these trade names have been recognized by the consuming public and the insurance industry as belonging to AWUL. AWUL registered the name "American Wholesalers Underwriting, Inc." with the United States Patent and Trademark Office on September 12, 1995. AWUL further contends that it registered the acronym "WIP" on August 27, 1996, and the name "Wholesale Insurance Plan" on April 21, 1998. AWUL has alleged that AWIG's use of the names "American Wholesale Insurance Group" and "American Wholesale" are confusingly similar to AWUL's recognized trade names and its registered trademark. AWUL also claims that AWIG's domain name creates confusion between the names and corporate identities of the parties. AWUL contends that it used the trade names "American Wholesalers

-2-

Underwriting" and "American Wholesalers" and maintained its web
site at <http://www.wipwins.com> "long before" AWIG began to use
its "confusingly similar" trade names and domain name.

AWUL alleges that AWIG solicits and regularly transacts
business within the State of Connecticut.  AWIG holds numerous
fully owned subsidiaries, two of which are connected to the State
of Connecticut.  New Century Global ("NCG"), a Delaware
corporation fully owned by AWIG, holds two subsidiaries within
the State of Connecticut: New Century Global of New England
("NCG-NE"), and Lambert Green, Ltd. ("LG").  NCG-NE has an office
in Farmington, Connecticut, which has seven (7) employees and
accounted for 1.3% of AWIG's profits in the year 2002.  LG is a
Connecticut corporation, but has only two employees, both of whom
are located in Virginia.

AWIG's web site has a map indicating its business locations.
Upon visiting the web site, the court observed a box numbered
five (5) covering the area of Connecticut as well as parts of
Massachusetts, New York, and Rhode Island.  Clicking this link
brings the user to information regarding the AWIG subsidiary NCG.
The NCG information lists an address and telephone number in New
York, and an email address for further information.

Plaintiff has alleged that the Farmington, Connecticut
address and telephone number for NCG-NE can be found at
<http://www.amwins.com>.  Upon accessing the web site on October

-3-

6, 2003 and November 18, 2003, this court was unable to find any reference to NCG-NE, nor was it able to find an address or phone number for the Farmington, Connecticut office. The Court was also unable to find a link to the NCG web site while navigating <http://www.amwins.com>. Because the existence of the address and phone number, as well as the link to the NCG web site, are not determinative of the court's assertion of jurisdiction, the court will credit the allegations made by the plaintiff in its consideration of the pending motion.[1]

AWIG has placed a minimum of six (6) magazine advertisements within national trade publications. Each of these magazines has between 1,000 and 2,000 subscribers within the State of Connecticut, which represents between 1% and 2.5% of each magazine's total national subscriptions. Each of these advertisements contain "American Wholesale Insurance Group", "<www.amwins.com>", and "New Century Global". AWIG also allegedly advertised its insurance products on the web site <http://www.programbusiness.com>.

---

[1] This underscores the importance of providing dated printouts, attached to an affidavit, if necessary, showing the information claimed to exist on a given web site so that the court can properly evaluate the evidence offered.

**II. DISCUSSION**

AWUL sets forth three counts in its Complaint. Defendant seeks dismissal of all counts of the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

A. STANDARD OF REVIEW

Under Rule 12(b)(2), an action should be dismissed if the court lacks jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a prima facie case of jurisdiction. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendants by a preponderance of the evidence. Robinson, 21 F.3d at 507 n.3. In a case where, as here, the parties have conducted extensive discovery regarding the defendants' contacts with the forum state, but no evidentiary hearing has been held, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include

-5-

an averment of the facts that, if credited by [the ultimate trier

of fact], would suffice to establish jurisdiction over the

defendant." <u>Ball</u>, 902 F.2d at 197; <u>see also</u> <u>Bensusan Restaurant</u>

<u>Corp. v. King</u>, 937 F. Supp. 295, 298 (S.D.N.Y. 1996)("[m]atters

outside the pleadings . . . may . . . be considered in resolving

a motion to dismiss for lack of personal jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(2) without converting it into [a motion]

for summary judgment").  When considering a Rule 12(b)(2) motion,

the court construes any factual averments and resolves all doubts

in the plaintiff's favor.  <u>CutCo Indus., Inc. v. Naughton</u>, 806

F.2d 361, 365 (2d Cir. 1986).

"In a federal question case where a defendant resides

outside the forum state, a federal court applies the forum

state's personal jurisdiction rules 'if the federal statute does

not specifically provide for national service of process.'"  <u>PDK</u>

<u>Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997)

(quoting <u>Mareno v. Rowe</u>, 910 F.2d 1043, 1046 (2d Cir. 1990)).

Because the Lanham Act does not authorize nationwide service of

process, <u>see, e.g.</u>, <u>Tomra of North America, Inc. v. Environmental</u>

<u>Products Corp.</u>, 4 F. Supp. 2d 90, 92 (D. Conn. 1998), the court

must determine <u>in personam</u> jurisdiction over each defendant

pursuant to the law of the forum state.  <u>See</u> <u>Arrowsmith v. United</u>

<u>Press Int'l</u>, 320 F.2d 219, 223 (2d Cir. 1963).  This requires a

two-step analysis.  <u>See</u> <u>Mozes v. Welch</u>, 638 F. Supp. 215, 222

-6-

(D. Conn. 1986) (citing <u>Arrowsmith</u>, 320 F.2d at 223); <u>Conn.</u>
<u>Artcraft Corp. v. Smith</u>, 574 F. Supp. 626, 629 (D. Conn. 1983).
First, the plaintiff has the burden of showing that the state's
long-arm statute authorizes the exercise of personal
jurisdiction.    <u>Mozes</u>, 574 F. Supp. at 222-23.    If the defendant
is subject to jurisdiction under the terms of the applicable
long-arm statute, then the court must also consider whether the
exercise of jurisdiction satisfies due process, namely whether
the defendants have "certain minimum contacts with [the forum
state] such that the maintenance of the suit [in that forum] does
not offend 'traditional notions of fair play and substantial
justice.'" <u>Int'l Shoe Co. v. State of Washington</u>, 326 U.S. 310,
316 (1945).

## B. LONG-ARM STATUTE

AWIG is not a resident of Connecticut, so plaintiff must
show that defendant is subject to personal jurisdiction pursuant
to Section 33-929 of the Connecticut General Statutes, which is
Connecticut's long-arm statute applicable to foreign
corporations.    Section 33-929(f)[2] provides, in pertinent part,

_____

[2] Although the parties cite Section 33-929(e) in their
memoranda, plaintiff does not explain how this provision applies
to allow the exercise of jurisdiction over defendant.
Specifically, plaintiff does not explain how defendant is
"transact[ing] business in this state in _violation of section 33-_
_920_," which is a prerequisite to applying Section 33-929(e).
Conn. Gen. Stat. § 33-929(e) (emphasis added). Because the court
cannot discern any, and the parties have not pointed out any,
material difference between the outcome of this analysis under

-7-

the following:  .

> Every foreign corporation shall be subject to suit in
> this state, by a resident of this state or by a person
> having a usual place of business in this state, whether
> or not such foreign corporation is transacting or has
> transacted business in this state and whether or not it
> is engaged exclusively in interstate or foreign
> commerce, on any cause of action arising as follows:  .
> . .(2) out of any business solicited in this state by
> mail or otherwise if the corporation has repeatedly so
> solicited business, whether the orders or offers
> relating thereto were accepted within or without the
> state; . . . or (4) out of tortious conduct in this
> state, whether arising out of repeated activity or
> single acts, and whether arising out of misfeasance or
> nonfeasance.

Conn. Gen. Stat. §33-929(f).  The Connecticut Supreme Court has

interpreted this provision to

> requir[e] inquiry not only into the various elements of
> the plaintiff's cause of action, spelled out in the
> various subparts of subsection [(f)], but also into the
> totality of contacts which the defendant may have with
> the forum. . . . Under subsection [(f)], consistent
> with the constitutional demands of due process, it is
> the totality of the defendant's conduct and connection
> with this state that must be considered, on a case by
> case basis, to determine whether the defendant could
> reasonably have anticipated being haled into court
> here.

Lombard Bros., Inc. v. General Asset Management Co., 190 Conn.

245, 254-55 (1983).[3]

Plaintiff claims that exercising personal jurisdiction is

authorized under subsections (f)(2) and (f)(4) of the long-arm

---

subsections (e) and (f), if subsection (e) were shown to be
applicable, the court will discuss subsection (f) only.

[3] Section 33-929(f) was, until January 1, 1997, codified as
Section 33-411(c).  The text is identical.

-8-

statute.  For the reasons set forth herein, neither subsection
authorizes the exercise of personal jurisdiction over defendant.

1. SUBSECTION (f)(4)

AWIG has not committed a tort within the State of
Connecticut, and is therefore not subject to personal
jurisdiction pursuant to Section 33-929(f)(4).  AWUL contends
that the court has personal jurisdiction over AWIG because AWIG
committed the tort of trademark infringement in Connecticut.
Trademark infringement can be a "tort" for the purpose of
determining long-arm jurisdiction, but the infringement must be
the act of selling products that infringe upon the plaintiff's
trademark, and the infringement must take place in the forum
state.  On-Line Technologies v. Perkin Elmer Corp., 141 F. Supp.
2d 246, 264 (D. Conn. 2001).  Plaintiff claims that the
infringement occurred in the State of Connecticut because
Connecticut is the place where "the passing off has occurred."
(Dkt. # 30).  "In trademark infringement and unfair competition
cases, a claim is said to arise . . . 'where the passing off
occurs, i.e., where the deceived customer buys the defendant's
product in the belief that he is buying the plaintiff's.'"
G.F.C. Fashions, Ltd. v. Goody's Family Clothing, No. 97 Civ.
0730, 1998 WL 78292, at *2 (S.D.N.Y. Feb. 20, 1998) (quoting
Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d
Cir.), cert. denied, 352 U.S. 871 (1956)); see Premeir Herbs,

-9-

Inc. v. Nature's Way Products, 689 F. Supp. 180, 184 (S.D.N.Y.
1988). While plaintiff has identified the proper standard,
plaintiff has the burden of producing evidence that this passing
off in fact occurred in Connecticut. The plaintiff's burden of
showing where a passing off occurs is low, requiring only "an
offering for sale of even one copy of an infringing product in
[the state], even if no sale results." Bensusan Restaurant
Corporation, 937 F. Supp. at 299; see Editorial Musical Latino
Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 64
(S.D.N.Y. 1993); German Educational Television Network, Ltd. v.
Oregon Public Broadcasting Co., 569 F. Supp. 1529, 1532 (S.D.N.Y.
1983).

Plaintiff has alleged that the "passing off" of the
insurance product has taken place in the State of Connecticut,
yet, with the aid of discovery, has been unable to show this
court evidence of a single AWIG customer located within the State
of Connecticut. Nor has AWUL provided evidence that any
potential or directly targeted AWIG customers are located in
Connecticut. Absent this showing, this court cannot conclude
that any "passing off" has occurred in Connecticut. As such, the
court does not have specific jurisdiction over defendant because
plaintiff has not produced sufficient evidence to claim that the
tort of trademark infringement may have occurred within the State
of Connecticut.

Plaintiff has alternatively suggested that the court may
have specific jurisdiction over the defendant because AWUL is a
Connecticut company that has been injured by the defendant's
alleged trademark infringement.   Plaintiff cites authority for
the proposition that, because the injury is felt in Connecticut,
the tort should be deemed to have been committed in Connecticut.
This argument ignores the language of Section §33-929(f)(4),
which provides the following: "Every foreign corporation shall be
subject to suit in this state . . . on any cause of action
arising . . . out of tortious conduct in this state, whether
arising out of repeated activity or single acts, and whether
arising out of misfeasance or nonfeasance."   Conn. Gen. Stat. §
33-929(f)(4).   The construction of this provision advocated by
plaintiff has been rejected by other courts in the District of
Connecticut, and is also rejected by this court.   See Southern
New England Distributing Corp. v. Berkeley Finance Corp., 30
F.R.D. 43, 47 (D. Conn. 1962) ("In the Connecticut statute, the
emphasis is unmistakably upon the *place where* the tortious
conduct occurred. It requires tortious conduct *in this state*.");
see also Bross Utilities Service Corp. v. Aboubshait, 489 F.
Supp. 1366, 1373 (D. Conn. 1980).

Plaintiff cites a decision of the Court of Appeals for the
Seventh Circuit in support of its argument that the state where
the tort injury is felt should have personal jurisdiction over

-11-

the tortfeasor.. <u>See</u> <u>Indianapolis Colts, Inc. v. Metropolitan</u>
<u>Baltimore Football Club Limited Partnership</u>, 34 F.3d 410, 412
(7th Cir. 1994).  However, in that case, the plaintiffs, the
Indianapolis Colts, by nature of operating a National Football
League team in Indiana, primarily used their trademark in
Indiana, and the Court of Appeals reasoned that the injury
inflicted by defendant, the Baltimore CFL Colts, would be felt
mainly in Indiana.  <u>Id</u>.  The Court of Appeals also noted that the
defendant could be deemed to have "entered" Indiana by way of a
national television broadcast of the defendant's football games,
and that this entry into Indiana itself would presumably cause
injury to the plaintiff by confusing Indianapolis Colts fans
located primarily in Indiana.  <u>Id.</u>  In the present action,
plaintiff uses its trademark in interstate commerce generally,
and does not, either purposefully or because of the very nature
of the product offered, target any particular customer base in
the State of Connecticut.  Further, absent a factual showing of
some kind of "entry" into Connecticut, or "passing off" in
Connecticut, similar to that presented in <u>Indianapolis Colts,</u>
<u>Inc.</u>, this court cannot exercise personal jurisdiction over AWIG
based upon Section 33-929(f)(4).

### 2. SUBSECTION (f)(2)

The Connecticut Supreme Court has interpreted Section 33-929
to permit the exercise of personal jurisdiction over a non-

-12-

resident corporation under two theories.  First, the court could find personal jurisdiction based upon a theory of specific jurisdiction, where, generally speaking the defendant purposefully directs certain enumerated activities at the forum state, and those activities actually caused the harm complained of.  See Thomason v. Chemical Bank, 234 Conn. 281, 288 (1995). Second, this court could exercise personal jurisdiction over a defendant under the theory of general jurisdiction, which under Section 33-929(f), means that "the defendant could reasonably have anticipated being hauled into court here some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation."  See id. at 296.  This court would have personal jurisdiction over AWIG under Section 33-929(f)(2) if the facts support either theory and the exercise of jurisdiction is constitutionally permissible.   Each theory is discussed in turn.

### i. SPECIFIC JURISDICTION

This court cannot exercise personal jurisdiction pursuant to a specific jurisdiction theory over AWIG, because it lacks the contacts required by Section 33-929(f)(2).  In order to apply subsection (f)(2) in the context of specific jurisdiction, the defendant's acts of solicitation must arise out of the solicitation.  See Thomason, 234 Conn. at 292.  Plaintiff argues

-13-

that AWIG's website, which is accessible to Connecticut Internet
users at <www.amwins.com> , solicits business in the State of
Connecticut.  The AWIG website is not a basis to impose specific
jurisdiction over AWIG.  Exercising personal jurisdiction by way
of specific jurisdiction predicated upon the maintenance of a
passive web site is not proper.  See On-Line Technologies v.
Perkin Elmer Corp., 141 F. Supp. 2d 246, 265 (D. Conn. 2001);
Bensusan Restaurant Corp. v. King, 937 F. Supp. at 295; E-Data
Corp. v. Micropatent Corp., 989 F. Supp. 173 (D. Conn. 1997).
The AWIG web site requires a potential customer to initiate
contact with AWIG by telephone, mail, or email, and customers
cannot directly purchase any product through the web site.  As
such, the AWIG site is "passive," and therefore personal
jurisdiction does not lie on this basis.

Second, the presence of AWIG subsidiaries in the State of
Connecticut is not a basis for the exercise of personal
jurisdiction over AWIG.  AWUL submits that this court has
specific jurisdiction over AWIG because AWIG has two subsidiaries
with a presence within Connecticut, NCG-NE and LG.  In order to
establish jurisdiction based on the presence of a subsidiary, the
parent corporation must fully control the subsidiary corporation
such that the corporate veil must be pierced.  Mountainview Plaza
Associates, Inc. v. World Wide Pet Supply, Inc.,76 Conn. App.
627, 633 (2003); Hersey v. Lonrho, 73 Conn. App. 78, 86 (2002).

-14-

However, assuming that this relationship does exist, plaintiff has been unable to fulfill its burden to produce evidence that either NCG-NE or LG has sold insurance under the name of "American Wholesale" within the State of Connecticut. AWUL has not even produced evidence that NCG or LG has sold any insurance product bearing the contested names "American Wholesalers", "American Wholesalers Underwriting", "Wholesale Insurance Plan", or "WIP" in any state. Without such a showing, this court cannot assert <u>in personam</u> jurisdiction over the defendant under Section 33-929(f)(2), which, in the context of specific jurisdiction, requires some causal link between NCG-NE's or LG's activities in Connecticut and the harm complained of.

### ii. GENERAL JURISDICTION

In order to exercise personal jurisdiction over AWIG under a theory of general jurisdiction, this court must be satisfied that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945)(quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). "Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its <u>in personam</u> jurisdiction when there are sufficient contacts between the State

-15-

and the foreign corporation." <u>Helicopteros Nacionales de
Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984).  Here, the
court must determine whether AWIG has sufficient contacts with
the State of Connecticut in order to apply general jurisdiction
under Connecticut's long-arm statute subject to the limitations
imposed by the Due Process Clause of the Fourteenth Amendment.

The Connecticut Supreme Court has recognized that "the
[Connecticut] legislature did not intend to authorize Connecticut
courts to exercise the full measure of 'general' jurisdiction
that would have been constitutionally permissible."  <u>Thomason v.
Chemical Bank</u>, 234 Conn. 281, 293 (1995).  The standard for
exercising personal jurisdiction over a defendant on a general
jurisdiction theory is that "the plaintiff need only demonstrate
that the defendant could reasonably have anticipated being hauled
into court here by *some person who had been solicited* in
Connecticut and that the plaintiff's cause of action is not
materially different from an action that might have resulted
directly from that solicitation."  <u>Id</u>. at 296 (italics in
original).

AWIG has four sources of contact within the State of
Connecticut: (1) magazine advertisements placed in national trade
magazines that have between 1,000 and 2,000 subscribers each in
the State of Connecticut;(2) one Internet advertisement on the
trade web site <www.programbusiness.com>; (3) two subsidiary

-16-

corporations, NCG-NE and LG; and (4) an Internet web site
accessible to Connecticut Internet users at <www.amwins.com> .

Plaintiff has not shown that there is personal jurisdiction
over defendant pursuant to a theory of general jurisdiction.
Both AWUL and AWIG have identified Thomason v. Chemical Bank, 234
Conn. 281 (1995), as illustrative of the standard for determining
whether to exercise general jurisdiction under Section 33-929(f).
In Thomason, the Connecticut Supreme Court reversed the trial
court's dismissal of the action for lack of personal jurisdiction
over the defendant, and held that exercising personal
jurisdiction over the defendant in Connecticut was appropriate
under the long-arm statute. See id. at 285. In that case, the
defendant, Citibank, had placed "advertisements in national
publications, including Business Week, the New York Times and the
Wall Street Journal . . . [representing], inter alia, that the
trustee bank was 'number one for . . . New York, New Jersey and
Connecticut. . . .'" Id. at 284. Further, Citibank had engaged
in "a substantial number of mortgage transactions in this state,"
issued a substantial number of credit cards to customers in
Connecticut, and included advertisements sent directly to
Connecticut customers within credit card statements. Id at 284-
85.

The four sources of AWIG contact with the State of
Connecticut identified by AWUL cannot be characterized as

-17-

"'affirmative measures designed to attract Connecticut' customers
in that they constitute the creation of 'an organizational
network that is likely to prompt a significant number of
Connecticut' residents to place business with the [defendant]."
Id. at 298 (quoting Frazer v. McGowan, 198 Conn. 243, 251-52
(1986)).  Absent a showing by plaintiff that the non-resident
defendants are likely to do significant business in Connecticut,
the Connecticut long-arm statute as interpreted by the
Connecticut Supreme Court would not permit the exercise of
jurisdiction over defendant.  As such, plaintiff fails to
establish general jurisdiction over defendant in the State of
Connecticut.

Citing Thomason, AWUL claims that this court has
jurisdiction over defendant based upon its Internet and magazine
advertisements.  However, in Thomason, the defendant placed
advertisements in major national publications, including The New
York Times, The Washington Post, and Business Week that
specifically referenced the State of Connecticut.  The defendant
in Thomason also included advertisements within its Connecticut
customers' credit card statements.  In this case, AWUL has
alleged that AWIG advertised in trade magazines such as The
Insurance Marketplace, Business Insurance, Insurance Journal,
Rough Notes, and American Agent and Broker; and on one trade web
site <www.programbusiness.com>.  The advertisements in Thomason

-18-

were placed in publications with a more broad circulation and a
far greater number of Connecticut subscriptions than the
advertisements placed by AWIG here.  Moreover, the <u>Thomason</u>
advertisements specifically mentioned that the product was
advantageous for Connecticut residents.  In this case, there was
no specific mention of the State of Connecticut within the
advertisements, and, because the subscribership of each trade
magazine in the State of Connecticut is less than 2,000, there is
no evidence that AWIG specifically targeted Connecticut
consumers.  Without deliberate targeting, or at least a more
substantial subscription base in Connecticut, there can be no
purposeful availment of the laws of the State of Connecticut, and
therefore long-arm jurisdiction cannot be proper.

    Plaintiff also claims that AWIG's subsidiary contacts to
Connecticut through  NCG-NE and LG satisfies the long-arm
statute.  "Mere ownership by a parent corporation of a subsidiary
corporation present in the forum state generally will not subject
the parent to personal jurisdiction in that forum . . . even when
the separation between parent and subsidiary is 'merely formal,'
as long as it is 'real.'" <u>Savage v. Scripto-Tokai Corp.</u>, 147 F.
Supp. 2d 86, 93 (D.Conn. 2001).  To acknowledge general
jurisdiction based on AWIG's subsidiary contacts, the court would
need to pierce the corporate veil to conclude that, because NCG-
NE and LG do business in Connecticut, AWIG does business here as

well.

The Connecticut Supreme Court has endorsed two approaches
for determining the circumstances when the corporate form should
be disregarded.  The first is the "instrumentality" theory:

> The instrumentality rule requires, in any case but an
> express agency, proof of three elements: (1) Control,
> not mere majority or complete stock  control, but
> complete domination, not only of finances but of policy
> and business practice in respect to the transaction
> attacked so that the corporate entity as to this
> transaction had at the time no separate mind, will or
> existence of its own; and (2) Such control must have
> been used by the defendant to commit fraud or wrong, to
> perpetrate the violation of a statutory or other
> positive legal duty, or a dishonest or unjust act in
> contravention of plaintiff's legal rights; and (3) The
> aforesaid control and breach of duty must proximately
> cause the injury or unjust loss complained of.

Zaist v. Olson, 154 Conn. 563, 575 (1967).  "The instrumentality
rule imposes individual liability for corporate actions upon a
shareholder, director, or officer of a corporate entity that is,
in economic reality, the instrumentality of the individual."
Campisano v. Nardi, 212 Conn. 282, 291 (1989).  Generally
speaking, liability under the instrumentality approach is imposed
where the corporate form is used to perpetrate some kind of
wrongful act for the benefit of one who controls the corporation.
See Zaist, 154 Conn. at 578.

Second, "[t]he identity rule primarily applies to prevent
injustice in the situation where two corporate entities are, in
reality, controlled as one enterprise because of the existence of
common owners, officers, directors or shareholders and because of

-20-

the lack of observance of corporate formalities between the two entities." Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 560 (1982). The Connecticut Supreme Court has defined the identity rule as follows:

> If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

Angelo Tomasso, Inc., 187 Conn. at 554 (quoting Zaist, 154 Conn. at 576). Generally speaking, the identity rule imposes liability when two corporations or a corporation and an individual should properly be considered one in the same. See Zaist, 154 Conn. at 578.

Plaintiff has not met its burden of demonstrating that defendant's corporate form should be disregarded under either rule. Plaintiff does not offer any evidence that AWIG dominates or controls its subsidiaries. Rather, plaintiff offers no evidence beyond that which would be customary in a parent-subsidiary relationship. Moreover, the fact that NCG-NE and LG are both thrice removed subsidiaries of AWIG does not permit the inference that the subsidiaries were created by AWIG to allow an economic entity to escape liability.

Plaintiff's offer with respect to defendant's activities on the Internet does not satisfy the requirements of Section

-21-

33-929(f). · The. Connecticut long-arm statute may apply to
corporations in a case where an Internet domain name or toll-free
phone number was the source of the infringement. See e.g., Inset
Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (D.
Conn. 1996). In Inset Systems, Inc., the court concluded that
the defendant had minimum contacts based upon its Internet web
address and toll-free telephone number that would subject it to
general jurisdiction in Connecticut. Id. The court reasoned that
because Internet advertisements reach up to 10,000 Connecticut
users and are available continuously, the defendant had
purposefully availed itself of the privilege of doing business
within Connecticut through its Internet web site and toll-free
phone number. Id. A distinguishing factor in the Inset Systems,
Inc. decision, however, was that the infringing trademark itself
was located within the defendant's Internet domain name and the
toll free phone number. Id. The court determined that general
jurisdiction was proper because even a "passive" user of the web
site would be subjected to an infringed trademark.

The "passive" Internet user described in Inset Systems Inc.
could not be deceived by the claimed infringement present on
AWIG's web site. A "passive" Internet user is one who can be
deceived by an infringing trademark through accessing a web site
without any additional action. Id. The passive Internet user or
1-800 caller could be deceived by the infringing mark in Inset

-22-

Systems Inc. through dialing the phone number or typing the web
address that directly included the infringed trademark.  For
general jurisdiction to apply based upon an Internet web site, a
passive Connecticut Internet user must have been in danger of
being deceived by the infringing trademark, which has not been
shown to happen in this case.  As such, general jurisdiction
cannot attach for the web site alone without a showing of a
deceived customer or potential customer as a result of the
contents of the AWIG web site.

Courts have declined to exercise personal jurisdiction over
a defendant when a "Connecticut user must find defendant's Web
address, access it, view and browse the information. . . ."
E-Data Corporation, 989 F. Supp. at 176.  Since Inset Systems,
Inc., courts have been reluctant to find in personam jurisdiction
based upon passive web sites because "upholding personal
jurisdiction . . . would, in effect, create national (or even
worldwide) jurisdiction, so that every plaintiff could sue in
plaintiff's home court every out-of-state defendant who
established an Internet web site."  The Hearst Corporation v. Ari
Goldberger, No. 96 Civ. 3620, 1997 U.S. Dist. LEXIS 2065, at *66
(S.D.N.Y. Feb. 26, 1997).  "Creating a site, like placing a
product into the stream of commerce, may be felt nationwide – or
even worldwide – but, without more, it is not an act purposefully
directed toward the forum state." Edberg, Wardlaw, and Idexx

-23-

Laboratories, Inc. v. Neogen Corporation, 17 F. Supp. 2d 104, 114
(D. Conn. 1998).  In Neogen, the court concluded that the Web
site was "similar to an advertisement in a national magazine or
newspaper," and distinguished its finding from that of Inset
Systems Inc. by showing that, in Neogen, the web site itself was
not "the source of the tortious conduct, i.e., the alleged
infringement." Id.  Neogen suggests that Inset Systems Inc.
actually addresses specific jurisdiction, and should not be
applied to cases of general jurisdiction.

Defendant's Internet domain name does not infringe upon
plaintiff's trademarks.  The names "wipwins" and "amwins" are
similar because each contains the term "wins", which stands for
"wholesale insurance".  AWUL has produced evidence that it
registered "WIP", which stands for "Wholesale Insurance Plan",
and not "wins."  The term "wins" is not a trademark that AWUL has
claimed as its own, and this is the only similarity between the
two domain names.  Therefore, the AWIG domain name does not
violate the AWUL trademark "WIP".  Because "amwins" does not
contain an infringement of a registered trademark, as did the
domain name in Inset Systems Inc., there is a much weaker
argument for in personam jurisdiction based upon this web site.
AWIG's web site does not directly target Connecticut consumers,
and plaintiff has not produced evidence of any Connecticut
consumer who was targeted or deceived by the web site.  As such,

general jurisdiction cannot be found.

In considering defendant's purported contacts within the State of Connecticut, plaintiff has fallen short of its burden to produce facts to satisfy a finding of general jurisdiction under Section 33-929(f) of the Connecticut General Statutes.

### III. CONCLUSION

The plaintiff holds the burden of providing the court with evidence to clearly establish jurisdiction over defendant. In this case, plaintiff has had the opportunity, with the benefit of discovery, to present an adequate showing of in personam jurisdiction under a theory of either specific or general jurisdiction. Plaintiff has failed to show specific actions taken by the defendant within the State of Connecticut to provide specific jurisdiction. The plaintiff also has failed to show that the defendant has a significant number of contacts with Connecticut that could comport with traditional notions of fair play and substantial justice to allow general jurisdiction under the Connecticut long-arm statute.

Although the court lacks personal jurisdiction over defendant, it need not dismiss the action: "[T]he Court's lack of [personal] jurisdiction does not require dismissal of the action because 28 U.S.C. § 1406(a) permits transfer of an action commenced in the wrong judicial district to the proper district in the interests of justice." Grill v. Walt Disney Co., 683 F.

Supp. 66, 69 (S.D.N.Y. 1988)(citing <u>Goldwater v Heiman</u>, 369 U.S. 463 (1962)); <u>see also</u>, e.g., <u>Levy v. Pyramid Co. of Ithaca</u>, 871 F.2d 9, 10 (2d Cir. 1989); <u>United Computer Capital Corp. V. Secure Products, L.P. & Secure Products Corp.</u>, 218 F.Supp 2d 273, 279 (S.D.N.Y. 2002).   In this case, "transfer is appropriate because defendants have actual notice of the litigation and therefore will not be prejudiced." <u>Grill</u>, 683 F. Supp. at 69. Furthermore, the court does not find that the defendant will suffer any prejudice if the action is transferred to North Carolina, as the record indicates that defendant AWIG is a resident of North Carolina.

     For the reasons set forth herein, defendant's motion to dismiss (dkt. # 14) is **GRANTED in part**.   The case is hereby **TRANSFERRED** to the Western District of North Carolina.   The Clerk of the Court shall close this file.

     So ordered this *30th* day of March, 2004.

                                        DOMINIC J. SQUATRITO
                                        UNITED STATES DISTRICT JUDGE